## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2016, 6:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tanno Sheard, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | April 28, 2016 <br><br> Court of Appeals Case No. 49A04-1510-CR-1644 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc T. Rothenberg, Judge <br><br> The Honorable Amy J. Barbar, Magistrate <br><br> Trial Court Cause No. 49G02-1309-FC-58033 |

**Najam, Judge.**

## Statement of the Case

Tanno Sheard appeals his conviction for operating a vehicle while intoxicated, causing death, as a Class C felony, following a jury trial. Sheard raises two issues on appeal, namely:

1. Whether the State presented sufficient evidence to support his conviction.

2. Whether the trial court erred in merging, rather than vacating, counts II, III, and IV into count I.

We affirm Sheard's conviction, but we remand with instructions for the trial court to clarify whether Sheard continues to have four judgments of conviction entered against him.

## Facts and Procedural History

On September 2, 2013, Douglas Levinson and his husband Kevin Woloshyn were vacationing in Indianapolis for the holiday weekend. Levinson was driving a Pontiac Vibe SUV, and Woloshyn was in the passenger seat, as they travelled east on Fall Creek Road. It was after 2:00 a.m. and the two were returning to their hotel after dining at a restaurant and then spending some time at a bar. Woloshyn had had some alcoholic drinks at the bar, but Levinson had had no alcohol that evening.

As Levinson approached the intersection of Fall Creek and Keystone Avenue he saw an ambulance in the left turn lane, stopped at the red light. The ambulance, driven by Emergency Medical Technician ("EMT") Scott Newby

of Indianapolis Emergency Medical Services, was waiting to turn north onto Keystone Avenue. The other member of the paramedic team for the ambulance that night was Joel Rees, who was the passenger. As Levinson approached the intersection in his SUV, the light turned from red to green and he proceeded through the intersection. Levinson's vision of oncoming traffic, moving southbound on Keystone Avenue, was blocked by the ambulance stopped in the left-hand turn lane to Levinson's left side.

[5] From where EMT Rees was sitting in the ambulance on the passenger side, he could see a red car moving at a high rate of speed southbound on Keystone and approaching the intersection with Fall Creek. Rees observed that the car was approaching the red light so quickly that it would not be able to stop. Rees shouted to Newby who then stopped his approach into the intersection, and the red car sped past the ambulance, just missing a collision by one foot. Rees[1] and Newby then saw the red car collide with Levinson's SUV just a few feet away from the ambulance. Newby and Rees saw that, like them, the SUV had a green light at the time.

[6] Rees called in the accident and requested police and fire assistance. Newby and Rees then set to work tending to the four persons[2] involved in the collision. After doing triage, Rees and Newby determined that the passenger in the

---

[1] Rees could not say which car hit the other first, but he was certain that the red car ran the red light and collided with the SUV, which had a green light. Newby saw the red car hit the SUV first.

[2] There was one passenger in the red car.

SUV—Woloshyn—needed the most assistance and they focused on him. Meanwhile, Officer Jason Rauch of the Indianapolis Metropolitan Police Department and its Fatal Alcohol Crash Team ("FACT") arrived at the scene of the collision and saw the ambulance and Levinson's SUV, still facing east on Fall Creek, with extensive front-end damage. Officer Rauch identified the driver of the SUV as Levinson and the passenger of the SUV as Woloshyn. Officer Rauch then spoke with Sheard and identified him as the driver of the red car, a Chevy Impala.

[7] Officer Rauch, who had previously investigated approximately 250 operating while intoxicated cases, observed no signs of intoxication while speaking with Levinson, but he did observe signs of intoxication in Sheard. Specifically, Officer Rauch noticed the odor of alcohol coming from Sheard, and he observed that Sheard had bloodshot and watery eyes. Officer Rauch asked Sheard if he had been drinking alcohol that evening, and Sheard said he had had two alcoholic drinks. Officer Rauch then transported Sheard to the police station and administered to Sheard the field sobriety test known as the Horizontal Gaze Nystagmus Test. This test consists of six "clues," and if a person fails four out of the six clues the person fails the sobriety test. Sheard failed all six clues of this test. Officer Rauch then administered to Sheard the Certified Breath Test, and, on Sheard's third try at blowing into the machine, he scored a blood alcohol content ("BAC") of .09 Officer Rauch then arrested Sheard.

[8] Meanwhile, Woloshyn had been taken to the hospital where he twice went into cardiac arrest. Woloshyn had multiple blunt force trauma to almost all of his organs, and he suffered hemorrhaging to his heart, liver, pancreas, kidney, spleen, and small intestine. Woloshyn's injuries caused him to die later that night.

[9] On September 4, 2013, the State charged Sheard with four counts: (1) operating a motor vehicle while intoxicated causing death, as a Class C felony; (II) operating a motor vehicle with a BAC greater than .08, causing death, as a Class C felony; (III) operating a motor vehicle while intoxicated, as a Class A misdemeanor; and (IV) operating a motor vehicle with a BAC between .08 and .15, a Class C misdemeanor. At the conclusion of Sheard's two-day trial, the jury found him guilty of all four counts. The trial court entered a judgment of conviction on all four counts, but it noted that "at the time of sentencing . . . we can talk about what needs to merge with what[,] if anything does. I think they do merge with each other. But we will enter the jury's verdict at this point." Tr. at 220-21. At the beginning of the September 23, 2015, sentencing hearing, the trial court stated that "it looks like to me that counts two, three, and four should all merge into count one," *id*. at 230, and the court then sentenced Sheard to four years of home detention on count I. This appeal ensued.

# Discussion and Decision

## *Issue One: Sufficiency of the Evidence*

[10]     Sheard contends that the State failed to provide sufficient evidence to support

his conviction on Count I.  In reviewing a sufficiency of the evidence claim, we

neither reweigh the evidence nor assess the credibility of the witnesses.  *See, e.g.*,

*Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010).  We consider only the

probative evidence and reasonable inferences therefrom that support the

conviction, *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans.*

*denied*, and we "consider conflicting evidence most favorably to the trial court's

ruling," *Wright v. State*, 828 N.E.2d 346, 352 (Ind. 2005).  We affirm if the

probative evidence and reasonable inferences drawn from that evidence "could

have allowed a reasonable trier of fact to find the defendant guilty beyond a

reasonable doubt."  *Jackson*, 925 N.E.2d at 375.  Pursuant to Indiana Code

Section 9-30-5-5(a)(3) (2013), to prove that Sheard operated a vehicle while

intoxicated, causing death, the State was required to prove beyond a reasonable

doubt that Sheard operated a vehicle while he was intoxicated, and his

operation of the vehicle caused the death of another person.

[11]     Sheard first asserts that the State failed to prove he was intoxicated.  Indiana

Code Section 9-13-2-86 defines intoxication in pertinent part as being under the

influence of alcohol "so that there is an impaired condition of thought and

action and the loss of normal control of a person's faculties."  Impairment can

be established by evidence of the following:  "'(1) the consumption of a

significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or

bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; and (6) slurred speech.'" *Outlaw v. State*, 918 N.E.2d 379, 381 (Ind. Ct. App. 2009) (quoting *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008)), *adopted by* 929 N.E.2d 196 (Ind. 2010).

[12]     Here, the evidence submitted by the State demonstrated that, at the time of his arrest, Sheard had watery, bloodshot eyes and smelled of alcohol. Further, Officer Rauch administered a field sobriety test and a Certified Breath Test, both of which Sheard failed. Sheard also twice failed to produce a sufficient breath sample to properly complete the certified breathalyzer test. And Sheard admitted that he had had two alcoholic beverages before he operated his motor vehicle. Similar evidence was sufficient to prove intoxication in *Outlaw*, and it is sufficient here. *See id.* Sheard's assertions to the contrary are merely requests for this court to reweigh the evidence, which we will not do. *See Jackson*, 925 N.E.2d at 375.

[13]     Sheard next asserts that the State failed to prove that his operation of his motor vehicle caused Woloshyn's death. To prove the causation element of the crime of operating a motor vehicle while intoxicated causing death, the State was required to show that Sheard's operation of a motor vehicle while intoxicated was a "substantial cause" of the resulting death, not a mere "contributing" cause. *Abney v. State*, 766 N.E.2d 1175, 1177 (Ind. 2002).

> The court in *Abney* restated the well-settled rule established in *Micinski v. State*, 487 N.E.2d 150, 154 (Ind. 1986), that the State must prove that the defendant's conduct was a proximate cause

of the victim's injury or death. *Id*. at 1178. But "conduct," in the context of *Micinski* and *Abney*, means the driver's act of operating the vehicle, not the particular manner in which the driver operates the vehicle. *Spaulding v. State*, 815 N.E.2d 1039, 1042 (Ind. Ct. App. 2004).

*Rowe v. State*, 867 N.E.2d 262, 268 (Ind. Ct. App. 2007).

[14] Here, Sheard maintains that the State failed to provide sufficient evidence that Sheard "entered the intersection under a red light." Appellant's Br. at 14. We disagree. The State presented the following evidence that Sheard sped through a red light at the intersection and crashed into the SUV, causing the injuries to Woloshyn that resulted in his death: (1) Officer Rauch identified Sheard as the driver of the red Impala at the scene of the collision; (2) EMT Rees saw Sheard's red Impala approach the intersection and "absolutely could tell" that the Impala ran the red light, Tr. at 56; (3) EMT Newby also observed the red Impala speeding through the red light; (4) Reese and Newby observed that the SUV had the green light; (5) Newby saw the red Impala driven by Sheard collide with the SUV; (6) Woloshyn was a passenger in the SUV and died as a result of the injuries he suffered from the collision. The State presented sufficient evidence to support Sheard's conviction for operating a vehicle while intoxicated, causing death. Again, Sheard's arguments to the contrary are merely requests that we reweigh the evidence.

### Issue Two: Merger of the Four Convictions

[15] Sheard contends that the trial court erroneously merged, rather than vacated, three of the four counts for which the trial court entered judgments of

conviction, and the State does not disagree.[3] Merger of two or more guilty verdicts is an oft-used tool by our trial courts to avoid double jeopardy violations. *E.g.*, *Payton v. State*, 818 N.E.2d 493, 497 (Ind. Ct. App. 2004), *trans. denied*. However, "the trial court's act of merging, without also vacating, the convictions is not sufficient" to avoid such violations. *Id.* "Indeed, a double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the 'practical effect' of concurrent sentences or by merger after conviction has been entered." *Id.*

[16] Here, the trial court entered judgments of conviction against Sheard on all four counts and ordered that counts II, III, and IV be merged with count I. Both Sheard and the State assert that the trial court's merger order was based on double jeopardy concerns. While the trial judge did not mention double jeopardy or any other reason for its merging of counts II, III, and IV with count I,[4] we agree with the parties that the trial court based the merger on obvious double jeopardy concerns. However, while the trial court may have intended to vacate the convictions on counts II, III, and IV, the record remains susceptible to the conclusion that Sheard stands convicted on those counts, as well as count I. *See Bunch v. State*, 697 N.E.2d 1255, 1257 (Ind. 1998). Accordingly, we

---

[3] The State notes on appeal that the trial court did merge all the counts, which would not cure any double jeopardy issues, if such exist.

[4] The Abstract of Judgment and Sentencing Order show only that the convictions on counts II, III, and IV are "merged," not vacated. Appellant's App. at 20, 22.

remand with instructions for the trial court to vacate the convictions on counts II, III, and IV.

[17]    Affirmed and remanded with instructions.

Robb, J., and Crone, J., concur.